UNITED STATES ex rel. Franklin LaNEAR, Relator-Appellant,

v.

Hon. J. Edwin LaVALLEE, as Warden of Clinton State Prison, Dannemora, New York, Respondent-Appellee.

No. 375, Docket 27451.

United States Court of Appeals Second Circuit.

Argued June 12, 1962.

Decided July 12, 1962.

---

Leon B. Polsky, Anthony F. Marra, New York City, for relator-appellant.

Mortimer Sattler, New York City (Louis J. Lefkowitz, Atty. Gen., of the State of New York), for respondent-appellee.

Before FRIENDLY, KAUFMAN and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

LaNear was convicted of burglary in the second degree by the County Court of Bronx County, N. Y., in 1950. He makes no complaint as to the proceedings leading up to that conviction. If that had been his first offense, punishment would have been "for a term not exceeding fifteen years," with no minimum stipulated, N.Y.Penal Law, McKinney's Consol.Laws, c. 40, § 407(2). However, in 1938, LaNear had been convicted of burglary, on a plea of guilty, in the Circuit Court of Jackson County, Missouri, and served his sentence. New York Penal Law, § 1941(1), required that, because of this earlier judgment, he must be sentenced, on his 1950 conviction in New York, "to imprisonment for an indeterminate term, the minimum of which shall be not less than one-half of the longest term prescribed upon a first conviction, and the maximum of which shall be not longer than twice such longest term." The judge in Bronx County Court sentenced him to an indeterminate term of fifteen to thirty years.

In this habeas corpus proceeding in the Northern District of New York where he is confined, LaNear alleged that at the time he pleaded guilty in Jackson County, Missouri, he was less than 17 years old; that he had completed only the fourth grade and was barely literate; that, prior to arraignment, he had been confined for over a month and had not been advised of the precise nature of the charge against him; that he was destitute and thus unable to hire a lawyer, as the prosecutor advised him he might; that the court did not inquire of him with respect to the assignment of counsel; and that the Missouri conviction thus was void. Except for a statement

that the New York Commissioner of Correction had refused to allow him to appear in Missouri in a proposed proceeding to vacate his conviction there, relator made no allegation of any attempt to take action in that state. New York, properly, has raised no objection on the ground that the maximum term for which LaNear could have been sentenced as a first offender has not expired, see the careful review of our decisions by Judge Kaufman in United States ex rel. Foreman v. Fay, 184 F.Supp. 535, 538–539 (S.D.N.Y.1960). It does claim the petition to be defective for failure to show exhaustion of Missouri remedies.

▇ Relying on opinions of this Court [1] which "at least by inference, indicated that the requirement of the exhaustion of state court remedies includes all reasonable efforts of a state court prisoner to obtain relief in the court of a sister state wherein it is claimed that the requirement of due process has been violated," Chief Judge Brennan denied the petition, but granted a certificate of probable cause. The conclusion the judge drew from language in the cited opinions was altogether natural, although in none was relief in fact denied for failure by the prisoner to take proceedings in the foreign state. We have concluded that no such requirement exists. Consequently we do not need to consider relator's further contention that Missouri has no remedy that can be availed of

without his presence, or his alternative claim that New York has the burden of showing the existence of such a remedy and has not discharged it.

▇ 28 U.S.C. § 2254 directs that "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." As a matter of language the phrases "the courts of the State" and "State corrective process" would seem quite clearly to refer to the State pursuant to the judgment of whose courts a petitioner is being held in custody, as do the phrases "the courts of the State" and "the law of the State" in the following paragraph of the section.[2] If that be so, LaNear has met the statutory requirement. He is in custody pursuant to the judgment of a court of New York, not of Missouri, and it is common ground that New York provides no method for testing the validity of convictions by other sovereigns used as a basis for New York sentences under its multiple offender law, People v. McCullough, 300 N.Y. 107, 89 N.E.2d 335 (1949) [Federal conviction]; United States ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir.1957).[3]

1. United States ex rel. Turpin v. Snyder, 183 F.2d 742 (2 Cir. 1950); United States ex rel. Smith v. Jackson, 234 F.2d 742 (2 Cir. 1956); United States ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir. 1957); United States ex rel. Farnsworth v. Murphy, 254 F.2d 438 (2 Cir.), rev'd on other grounds, 358 U.S. 48, 79 S.Ct. 76, 3 L.Ed.2d 46 (1958); United States ex rel. Moore v. Martin, 273 F.2d 344 (2 Cir. 1959), cert. denied, 363 U.S. 821, 80 S.Ct. 1262, 4 L.Ed.2d 1518 (1960).

2. "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

3. People v. McCullough was a *coram nobis* proceeding long after sentence and thus did not rule specifically on the right of a defendant to attack a foreign conviction on constitutional grounds at the time of sentence. Cf. Gayes v. New York, 332 U.S. 145, 149 fn. 3, 67 S.Ct. 1711, 91 L.Ed. 1962 (1947). But the rationale of the opinion would cover the latter situation; we have said broadly that "under New York law the New York courts will not entertain an attack on a judgment of conviction entered in another state," United States ex rel. Savini v. Jackson, 250 F.2d at 351; and New York does not here contend to the contrary, see People v. Coleman, 283 App.Div. 875, 129 N.Y.S.2d 199 (2d Dept. 1954); People v. Toler, 29 Misc.2d 384, 204 N.Y.S.

■ When we go behind the words of § 2254 to the sense of the requirement of exhaustion, we come to the same conclusion. It has been said that the exhaustion doctrine "simply told the prisoner, with entire reasonableness, that if the doors of the state courts and of the federal courts were both currently open to him, he ought to try the state doors first," Hart, Foreword to The Supreme Court, 1958 Term, 73 Harv.L.Rev. 84, 113 (1959). The policy behind this teaching, namely, that the state whose action is under attack should have an opportunity to consider this before Federal intervention, is satisfied if the doctrine is limited to the courts of the state which is confining the prisoner; it does not demand a further journey through the doors of the courts of another state which is not. A determination in Federal habeas corpus that the out-state judgment was void will not bind that state if the issue should ever become important there. It will simply determine that the judgment is an impermissible basis for New York's confining the prisoner longer than New York would otherwise have done. To the extent that such a determination inflicts an indignity on the foreign state we suspect the state would much rather bear this than take the time of its courts and prosecutors in usually fruitless proceedings concerning the validity of a sentence long since served.[4]

■ ■ Only in form is LaNear's complaint over what Missouri allegedly did; in every practical sense his grievance is over what New York is doing with what Missouri did. Missouri's allegedly unconstitutional action against him had spent its force until New York made it

a legal basis for increased sanctions of its own. In earlier days, when Federal habeas corpus was thought to be limited to cases where the confinement was at the hands of a court or other body lacking "jurisdiction," there might have been a substantive question, quite apart from "exhaustion," whether a complaint like LaNear's stated a claim. But the modern concept that the writ "extends also to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights," Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 966, 86 L.Ed. 1302 (1942), see Hart, supra, pp. 103–106, includes a claim that New York is disregarding a prisoner's constitutional rights if it takes account of a conviction, obtained in violation of fundamental requirements, not merely as a datum bearing upon sentence, which the judge could consider in the light of all circumstances affecting its weight, but as a requirement compelling a longer sentence *ex proprio vigore*. In any event we crossed that bridge long ago, see cases cited in footnote 1. That the violation of due process in such cases is by New York, not by the foreign state, is neatly demonstrated by the decisions permitting a prisoner to show that a Canadian conviction used as a basis for a multiple offender sentence was obtained by methods that would offend the Fourteenth Amendment if the judgment had been rendered by a state court, United States ex rel. Dennis v. Murphy, 265 F.2d 57 (2 Cir.1959); United States ex rel. Foreman v. Fay, 184 F.Supp. 535 (S.D.N.Y. 1960). The alleged violation of constitutional right thus being New York's and

2d 306 (Suffolk County Ct., 1960); but see People v. Eckert, 198 Misc. 626, 102 N.Y.S.2d 676 (Livingston County Ct., 1950); People v. Kadio, 12 Misc.2d 901, 177 N.Y.S.2d 456 (Schenectady County Ct., 1958). We therefore have no occasion to consider whether if it had been possible for LaNear to question the validity of his Missouri conviction at the time of his New York sentence, his failure to have done so would bar him under 28 U.S.C. § 2254, cf. Hart, Foreword to

The Supreme Court, 1958 Term, 73 Harv.L.Rev. 84, 113 (1959); Reitz, Federal Habeas Corpus: Impact of an Abortive State Proceeding, 74 Harv.L.Rev. 1315, 1364–1365 (1961).

4. A letter from a judge of the Circuit Court of Jackson County, Missouri, appended to the Attorney General's brief, states that "Both the judge, who sentenced the defendant, and the court reporter at the time, are deceased."

New York having provided no method for questioning an out-state conviction used as a basis for a multiple-offender sentence, a New York prisoner challenging the validity of such a conviction on constitutional grounds may proceed directly in a Federal court.[5] As indicated by Judge Hincks in the Savini opinion, 250 F.2d at 354–355, we are aware of the heavy burden this places on New York; but "to the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions."

It is true that the decisions of this Court cited by the District Judge, see footnote 1, seem to have assumed that proceedings must be taken in the foreign state (although not in a foreign country, see the Dennis and Foreman cases, supra) if that were possible, although all of them concluded that no such remedies were available under the circumstances presented. But that pattern was set by United States ex rel. Turpin v. Snyder, 183 F.2d 742 (2 Cir.1950), where the relator had attempted *coram nobis* in Wisconsin and, relying on that state's refusal to take jurisdiction, did not argue that resort to it had not been necessary. The brief filed by assigned counsel (Lloyd F. MacMahon, Esq., as he then was) for the relator in United States ex rel. Smith v. Jackson, 234 F.2d 742 (2 Cir.1956), raised the latter question, but we did not decide it, upholding his alternative argument that Virginia had disclaimed jurisdiction. In United States ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir.1957), and United States ex rel. Moore v. Martin, 273 F.2d 344 (2 Cir. 1959), cert. denied, 363 U.S. 821, 80 S.Ct. 1262, 4 L.Ed.2d 1518 (1960), the relators stood upon their proved inability to proceed in the foreign state so long as New York prevented them from going there; in United States ex rel. Farnsworth v.

Murphy, 254 F.2d 438 (2 Cir.) rev'd on other grounds, 358 U.S. 48, 79 S.Ct. 76, 3 L.Ed.2d 46 (1958), the relator relied on the many proceedings he had taken in Maryland.

Other decisions, not cited by the parties, come closer to having decided the issue in the direction for which the Attorney General contends, but not to the extent that, unanimous as we are, we feel bound to follow such lead as they give or to refer the issue for consideration by the full court. In United States ex rel. Morgan v. Martin, 202 F.2d 67, 68 (2 Cir.), cert. denied, 345 U.S. 977, 73 S.Ct. 1126, 97 L.Ed. 1392 (1953), the alleged unconstitutional conviction was in the Federal court for the Northern District of New York. Judge Augustus N. Hand said that since relator "has an available remedy through a writ of error *coram nobis* in the United States District Court for the Northern District," a decision made, in the same opinion, on the companion appeal in United States v. Morgan, aff'd, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), "we can see no reason for discussing whether he might also avail himself of a writ of habeas corpus in the Western District," citing the Turpin case; because of this and the lack of a record the appeal from a denial of habeas corpus by the Western District was dismissed. The statement in United States ex rel. Farnsworth v. Murphy, 207 F.2d 885, 887 (2 Cir.1953), that relief would not have been granted in Turpin had it not "appeared that the Wisconsin courts had denied all jurisdiction over a sentence by any available means," was unnecessary to the decision there, which rested on the ground, whether correct or not that Farnsworth was precluded by rulings against him on the merits in foreign *coram nobis*. In United States ex rel. Atkins v. Martin, 228 F.2d 188 (2 Cir.1955), we did rely on failure to exhaust Florida remedies; but this was only an alternative ground

---

5. Nothing herein is meant to cast doubt on the proposition that a prisoner may seek relief, by *coram nobis* or other appropriate remedy, from the court that rendered the allegedly invalid sentence, if he chooses to do so because of the greater availability of evidence or any other reason.

and the meager *pro se* brief filed by the relator did not contend that such exhaustion was not required. See also Davis v. Jackson, 246 F.2d 268 (2 Cir. 1957); cf. United States ex rel. Cutrone v. Fay, 289 F.2d 470 (2 Cir.1961). The issue here decided was sharply raised in United States ex rel. Frederick v. Martin, 282 F.2d 90 (2 Cir.1960), but Frederick died before the appeal was argued.

The order denying LaNear's petition for failure to show exhaustion of Missouri remedies is reversed, with directions to conduct a hearing, see Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); People [sic] ex rel. Bowers v. Fay, 171 F.Supp. 558 (S.D. N.Y.1958), aff'd, United States ex rel. Bowers v. Fay, 266 F.2d 824 (2 Cir. 1959).